UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

METROPOLITAN PROPERTY & CASUALTY
INSURANCE CO.,
    Plaintiff,

v.

WILLIAM SISBARRO, JR. et al.,
    Defendants.

No. 3:13-cv-537 (MPS)

**MEMORANDUM OF DECISION**

**I.    Introduction**

Plaintiff Metropolitan Property and Casualty Insurance Company ("Metropolitan") seeks a declaratory judgment that the defendant, William Sisbarro, Jr. ("Mr. Sisbarro"),[1] is not an insured on two policies issued to Mr. Sisbarro's parents, and as such, Metropolitan has no duty to defend or indemnify Mr. Sisbarro in connection with any claims and/or lawsuits arising from his May 2012 car accident. Intervening defendant and counterclaim-plaintiff Christopher Sheppard, II ("Mr. Sheppard") seeks a declaration finding the opposite. Because I find the language of the underlying policies unambiguously demonstrates that Mr. Sisbarro was not an "insured" for the purpose of claims arising out of the May 2012 accident and that Metropolitan therefore has no duty to defend or indemnify him, I GRANT Metropolitan's motions for summary judgment and default judgment.

**II.  Facts**

The parties do not dispute the facts underlying this action. Mr. Sisbarro's parents, William Sisbarro and Marian Sisbarro, were named insureds on a Metropolitan Auto Insurance

---

[1] Mr. Sisbarro has not appeared in this action. This Court entered default against him (ECF No. 47), and Metropolitan has now moved for default judgment. (ECF No. 48.)

1

Policy (the "Policy") and Personal Excess Liability Policy ("PELP").[2] (Pl.'s SOF ¶ 2.) The policies' Declarations list Mr. Sisbarro as a household driver. (Pl.'s MSJ, Exs. A, B.) On May 13, 2012—a period during which the policies were in place and Mr. Sisbarro resided with his parents—he was involved in an accident while operating a 1996 Chevrolet pick-up truck owned by him and insured by Progressive Insurance Company. (Pl.'s SOF ¶ 4.) Mr. Sheppard was a passenger in Mr. Sisbarro's vehicle, along with Tyler D'Amaro and Dave Conway.[3] (*Id.* ¶¶ 5, 6.) Progressive paid $20,000 to Mr. Sheppard and $10,000 each to Messrs. D'Amaro and Conway, thereby exhausting the coverage under Mr. Sisbarro's policy. (*Id.* ¶ 7.)

Metropolitan admits that it initially advised Mr. Sheppard's counsel that it would provide coverage and requested Mr. Sheppard's medical records and related documents. It also admits that it erroneously made payments to Messrs. D'Amaro and Conway and only refused to pay Mr. Sheppard after realizing that its policies do not actually cover claims arising out of Mr. Sisbarro's May 2012 accident. (*See* Pl.'s MSJ, at 10.) After Metropolitan filed this action, Mr. Sheppard filed suit against Mr. Sisbarro, whom Metropolitan is defending under a reservation of rights. (Pl.'s SOF ¶ 9.) Neither party has submitted any evidence that judgment has been entered in Mr. Sheppard's underlying case.

### III. Legal Standards

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations

---

[2] To the extent Mr. Sheppard argues I should not exercise jurisdiction over this case because William and Marian Sisbarro are indispensable parties not named in this proceeding, he is incorrect. There is no evidence that either of them "claims an interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B), was involved in the May 2012 accident, or was sued in the underlying action. Nor does their absence prevent the Court from affording relief among the existing parties. Fed. R. Civ. P. 19(a)(1)(A). Nor have the existing parties raised any question as to Metropolitan's coverage obligations to them.

[3] Messrs. D'Amaro and Conway are not parties to this case.

of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Because Metropolitan is defending a pending underlying action under a reservation of rights, there is an "actual controversy" within the Court's jurisdiction.

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

IV. Discussion

    **A. Metropolitan has no duty to defend or indemnify Mr. Sisbarro for claims arising out of the May 2012 accident.**

"In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut construes broad policy language in favor of imposing a duty to defend on the insurer, and requires a defense [i]f an allegation of the complaint falls even *possibly* within the coverage." *Ryan v. Nat'l Union Fire Ins. Co.,* 692 F.3d 162, 167 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original).

"It is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law[.]"

3

*Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 263 (D. Conn. 1988). "An insurance policy is to be interpreted by the same general principles that govern the construction of any written contract . . . . [T]he determinative question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 38 (2014) (quoting *Johnson v. Connecticut Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011)).

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Id*.

Mr. Sheppard cites no language in the policies that he deems ambiguous. Rather, he argues that the policies are ambiguous because Metropolitan initially believed there was coverage. Yet a plain reading of the policies demonstrates that the policies unambiguously do not cover claims arising out of the May 2012 accident. The policies provide coverage for three types of vehicles: (1) covered automobiles, (2) non-owned automobiles, and (3) substitute automobiles. (Pl.'s MSJ, Ex. A, 2-3.) As discussed below, because Mr. Sisbarro's 1996 Chevy does not fall under any of these definitions, Metropolitan does not have to defend or indemnify him for claims arising out of the May 2012 accident.

The Policy lists Mr. Sisbarro's parents as named insureds and Mr. Sisbarro as a household driver. (Pl.'s MSJ, Ex. A.) The Policy defines "you" as Mr. Sisbarro's parents, and

"relative" as any person related to his parents by blood, marriage, or adoption and who resides in their household.  (*Id*. at 1-2.)  Mr. Sisbarro, related by blood to his parents and residing in their house at the time of the accident, was a "relative" within the meaning of the Policy at that time.  (Pl.'s MSJ, Ex. C, 11:4-6.)

Under the "Coverage Provided" provision, the Policy states:

> **COVERAGE PROVIDED**
>
> **We** will pay damages for **bodily injury** and **property damage** to others for which the law holds an **insured** responsible because of an accident which results from the ownership, maintenance or use of a **covered automobile**, a **non-owned automobile** or a **trailer** while being used with a **covered automobile** or **non-owned automobile**.  **We** will defend the **insured**, at **our** expense with attorneys of **our** choice, against any suit or claim seeking these damages.  **We** may investigate, negotiate or settle any such suit or claim.

(Pl.'s MSJ, Ex. A, at 3) (emphasis in original).  The Policy defines a "covered automobile" as

> 1. any motor vehicle described in the Declarations.
> 2. an **automobile** newly acquired by **you**, if:
>    a. it replaces a vehicle described in the Declarations; or
>    b. it is an additional **automobile**, but only if:
>       i. **we** insure all other **automobiles** owned by **you** on the date of acquisition;
>       ii. **you** notify **us** within 30 days of acquisition of **your** election to make this and no other policy issued by **us** applicable to the **automobile**; and
>       iii. you pay any additional premiums required by **us**.
> 3. a **substitute automobile**.

(*Id*. at 2, Endorsement CT702) (emphasis in original).  Mr. Sisbarro's 1996 Chevy does not satisfy the first prong because the car was not listed in the Declarations.  It does not satisfy the second prong because there is no evidence that Mr. Sisbarro's 1996 Chevy was newly acquired by Mr. Sisbarro's parents to replace a vehicle listed in the Declarations, or that the car was an additional automobile as to which Mr. Sisbarro's parents notified Metropolitan and paid an

5

additional premium.

In addition, Mr. Sisbarro's 1996 Chevy was not a "substitute automobile," which the Policy defines as "a motor vehicle not owned by you or any resident of the same household and which is used with the owner's permission to replace for a short time a covered automobile. The covered automobile has to be out of use for servicing or repair or because of breakdown, loss or destruction." (*Id*. at 3.) Because Mr. Sisbarro owned his 1996 Chevy and resided at his parents' household at the time of the accident, his car was not a "substitute automobile."

Nor is Mr. Sisbarro's 1996 Chevy a "non-owned automobile." The Policy defines a non-owned automobile as "an automobile which is not owned by, furnished to, or made available for regular use to you or any resident in your household." (*Id*.) Because at the time of the accident Mr. Sisbarro was a resident of his parents' household and owned the 1996 Chevy he kept at his parents' house, his car would not fall under this definition. (Pl.'s MSJ, Ex. C, 11:4-6, 22:3-18.) And although "[a]n automobile owned by, furnished to, or made available for regular use to any resident in your household, is considered a non-owned automobile when used by you," this exception does not apply because it is undisputed that Mr. Sisbarro—not his parents, defined as "you"—was driving his 1996 Chevy at the time of the accident. (Pl.'s MSJ, Ex. A, at 3.) Finally, while a non-owned automobile also includes "a commercially rented automobile, or truck which has a Gross Vehicle Weight Rating of under 26,000 lbs., used by you or a relative on a temporary basis," (*see id*., Endorsement CT702), this provision does not apply to Mr. Sisbarro's vehicle because the undisputed evidence demonstrates he owned, and did not commercially rent, his 1996 Chevy, and there is no evidence he used it on a temporary basis. (Pl.'s MSJ, Ex. C, 6:17-24.) His car is therefore not a "non-owned automobile."

In sum, Mr. Sisbarro's 1996 Chevy does not fall into any of the categories of vehicles for

which Metropolitan provides coverage.  Because the accident did not "result[] from the ownership, maintenance or use of a covered automobile, a non-owned automobile, or a trailer while being used with a covered automobile or non-owned automobile," Metropolitan has no obligation to "pay damages" under the Policy.  In addition, because the duty to defend applies only to "any suit or claim seeking these damages," i.e., damages for which an insured becomes legally responsible "because of an accident which results from the ownership, maintenance or use of a covered automobile" or a "non-owned automobile," Metropolitan has no duty to defend Mr. Sisbarro.

Further, because the Policy contemplates that one can be an "insured" only with respect to a covered vehicle or a non-owned vehicle,[4] and because no such vehicle is involved here, Mr. Sisbarro is not an "insured."

Finally, the PELP states that it does not provide coverage for injury arising out of the ownership, maintenance, or use of any vehicle unless used by an insured and covered by the underlying Policy.  (Pl.'s MSJ, Ex. B, at 2.)  The underlying Policy does not provide coverage, and so neither does the PELP.   Mr. Sisbarro is therefore not an "insured" under the policies and Metropolitan has no duty to defend or indemnify Mr. Sisbarro for the claims arising out of his

---

[4] Specifically, the definition of an "insured" states:

"**INSURED**" means:
1. with respect to a **covered automobile**:
    a. **you**;
    b. any **relative**; or
    c. any other person using it within the scope of **your** permission.
2. with respect to a **non-owned automobile**, **you** or any **relative**.  The operation or use of such vehicle must have been with the permission of, or reasonably believed to have been with the permission of, the owner.  The operation or use must also have been within the scope of the permission given.
3. any other person or organization if liable due to the acts or omissions of any person described in 1. or 2. above.  This provision does not apply:
    a. if the vehicle is a **non-owned automobile** owned or hired by the person or organization.
    b. to the United States of America or any of its agents.

(Pl.'s MSJ, Ex. A, at 2, Endorsement CT702) (emphasis in original).

May 2012 accident.[5]

## B. Mr. Sheppard's Remaining Arguments Lack Merit

Mr. Sheppard raises a number of arguments by which he seeks to create coverage for Mr. Sisbarro, regardless of the policies' language. These arguments fail, however, because they are unavailable to one who, like Mr. Sheppard, is neither an insured nor someone standing in the shoes of an insured. First, Mr. Sheppard cannot properly bring these claims because there is no evidence that a final judgment has been entered against Mr. Sisbarro. Under Connecticut General Statutes § 38a-321,[6] a judgment creditor may step into the shoes of the insured to bring a direct action against an insurer. Because Mr. Sheppard is not a judgment creditor subrogated to enforce Mr. Sisbarro's rights against Metropolitan, he may not invoke this statute. *See Carford*

---

[5] As discussed, Mr. Sheppard does not argue that any specific sections in the policies provide coverage or are ambiguous. He also does not argue that he is a third party beneficiary entitled to payment from Metropolitan under the "Automobile Medical Expense" section or the "Uninsured and Underinsured Motorists" sections. I therefore do not address the language in those sections.

[6] This section states:

> Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

Conn. Gen. Stat. § 38a-321.

*v. Empire Fire & Marine Ins. Co.*, 94 Conn. App. 41, 46 (2006) ("A third party claimant is subrogated to the rights of the insured, and is entitled to bring an action against an insurance company, only *after* judgment.") (emphasis in original).[7] Thus, even if Mr. Sisbarro were an insured—and I have already determined that he is not—Mr. Sheppard could not step into his shoes and assert defenses that might be available to an insured.

Although Mr. Sheppard argues that "exceptions to the general rule that a third party may not bring a direct action against the insured until a judgment has been obtained should be carved out when the insurance company engages in affirmative advice or engages in direct and offending conduct," he cites no authority for this notion. (Opp. to MSJ, at 13.) Requiring an insurer to defend or indemnify a non-insured party, solely because a third party who is not a third party beneficiary, subrogee, or judgment creditor, seeks such a result, would grossly expand insurers' liability. For this and the other reasons explained below, Mr. Sheppard's remaining arguments fail.

### 1. CUTPA/CUIPA

Mr. Sheppard argues that Metropolitan violated CUIPA's unfair claim settlement practices section, Conn. Gen. Stat. § 38a-816(6), by misrepresenting whether coverage was available and failing to implement adequate investigation standards. "[A] plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Tucker v. Am. Int'l Grp., Inc.*, 3:09-cv-1499, 2015 WL 403195, at *22 (D. Conn. Jan. 28, 2015). However, a third party to the insurance contract, like Mr. Sheppard, may not bring such a claim absent subrogation or a judicial determination that the insured faces

---

[7] In his Answer, Mr. Sheppard raises an affirmative defense under Conn. Gen. Stat. § 38a-323b. (ECF No. 11-1.) Metropolitan briefed the issue in its Motion for Summary Judgment, but Mr. Sheppard did not address it in his opposition brief. I therefore deem it waived. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

liability.  *See Carford*, 94 Conn. App. at 53 ("We do conclude that the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or a judicial determination of the insured's liability. To hold otherwise would create confusion, increased and multiple litigation both generally and within specific cases, the potential coercion of settlements when the insured's liability has not been and may never be established, and an inherent conflict of interest.").  Mr. Sheppard is not a subrogee and there has been no determination of an insured's liability.  Mr. Sheppard's CUIPA claim therefore fails.

### 2. Laches

Mr. Sheppard argues that laches bars Metropolitan from denying coverage, citing the Connecticut Appellate Court's decision in *Caminis v. Troy*.  "The defense of laches, if proven, bars a [party] from seeking equitable relief. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the [opposing party]. . . . The burden is on the party alleging laches to establish that defense. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the [opposing party] . . . as where, for example, the [opposing party] is led to change his position with respect to the matter in question." *Caminis v. Troy*, 112 Conn. App. 546, 552 (2009) (citations and internal quotation marks omitted), *aff'd on other grounds*, 300 Conn. 297, 12 A.3d 984 (2011).

As an initial matter, the *Caminis* court permitted a laches defense only after finding that the underlying action—a declaratory action seeking a littoral boundary—sounded in equity. *Id*. at 556 ("[B]ecause the request for a declaratory judgment in this case is based on an underlying claim that sounds in equity and is subject to laches, the declaratory action is likewise subject to the same defense.").  Further, "[c]ourts have routinely referred to laches as an equitable defense, that is, a defense to equitable remedies but not a defense available to bar a claim of legal relief."

*Id*. at 557 (quoting reference omitted).  The underlying claim here—whether Mr. Sisbarro is an "insured" such that Metropolitan is required to defend or indemnify him—is a claim sounding not in equity but in law.  *See, e.g., Memorial Hosp. for Cancer & Allied Diseases v. Empire Blue Cross & Blue Shield*, 93-cv-6682, 1994 WL 132151, at *6 (S.D.N.Y. April 12, 1994) (explaining that declaratory judgment counterclaim seeking a determination of defendant's rights and obligations under ERISA-covered plan "is basically one of contract interpretation [which] is a legal claim, not an equitable claim[.]").  Laches is therefore not a proper defense.

Even if Mr. Sheppard could raise laches in these circumstances, his claim would fail for lack of prejudice.  Mr. Sheppard argues he suffered "prejudice" because he forwarded a victim's statement to the Office of the State Attorney in connection with a criminal prosecution brought by the State against Mr. Sisbarro when Mr. Sheppard thought Metropolitan would provide coverage under the Policy.  (*See* Opp. to MSJ, Ex. 23.)  Yet Mr. Sheppard's opposition brief and summary judgment record are silent as to what prejudicial effect the letter might have had on him.  Given the sparse language of the letter[8] and Mr. Sheppard's failure to provide evidence of any actual prejudice he suffered as a result of the letter, his laches argument fails.

### 3. Waiver and Estoppel

Next, Mr. Sheppard argues that Metropolitan should be estopped from denying Mr. Sisbarro coverage, and separately, that Metropolitan has waived its right to deny Mr. Sisbarro coverage.  "[E]stoppel always requires proof of two essential elements: the party against whom

---

[8] In full, the letter states:

> To whom it may concern:
>
> Please be advised that I represent Mr. Christopher Sheppard, a passenger injured in the car driven by Mr. Sisbarro.  We are requesting that you give Mr. Sisbarro whatever consideration possible with respect to the criminal charges.

(Opp. to MSJ, Ex. 16.)

estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Union Carbide Corp. v. City of Danbury*, 257 Conn. 865, 873 (2001) (quoting reference omitted). "Waiver is 'the intentional relinquishment or abandonment of a known right or privilege.'" *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 58 (2009) (quoting reference omitted).

Both of these doctrines are inapplicable in the insurance coverage context when there is no coverage under the applicable policy. *See Tucker*, 2015 WL 403195, at *18 (rejecting plaintiff's waiver and estoppel arguments after finding insurance policy did not provide coverage because "it is well established that waiver and estoppel 'are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provision thereof.'") (quoting 1 A.L.R. 3d 1139, at § 2[a]). Mr. Sheppard cannot use estoppel or waiver to create coverage when it does not otherwise exist.[9]

### 4. Bad Faith

Finally, Mr. Sheppard argues that Metropolitan's actions constitute "bad faith" and preclude it from denying Mr. Sisbarro coverage. "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably

---

[9] In any event, Mr. Sheppard has failed to provide evidence that Metropolitan's initial coverage determination was intentional and not a mistake, or that he was actually prejudiced by Metropolitan's actions.

expected to receive under the contract must have been taken in bad faith. . . . Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795 (2013) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432–33 (2004)).

Given the contractual nature of this right, "[a] bad faith cause of action not tied to duties under the insurance policy must therefore fail as a matter of law." *Id*. at 797. Thus, even if Mr. Sheppard was the appropriate party to bring a bad faith claim—which he is not, as he is not a party to the insurance contract—his bad faith claim fails because it is not tied to the underlying policies, as Metropolitan does not have to provide coverage for Mr. Sisbarro for claims arising out of the May 2012 accident. *See Tucker*, 2015 WL 403195, at *20 (granting summary judgment against plaintiff's bad faith claim after finding insurance contract did not provide coverage because the insurance company "cannot be liable for lack of payment on a claim not covered by the policy so there has been no substantive bad faith."); *see also Chorches v. Stewart Title Guar. Co.*, 13-cv-1182, 2014 WL 4494240, at *5 (D. Conn. Sept. 10, 2014) ("Because plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage.").[10]

To the extent Mr. Sheppard raises a separate procedural bad faith claim arising out of Metropolitan's coverage investigation, even assuming, *arguendo*, he were the proper party to bring such a claim, the Connecticut Supreme Court has recently made clear that, as in "the

---

[10] Mr. Sisbarro's bad faith claim would also fail because it may not be "prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive," and Mr. Sisbarro has provided no evidence of the latter. *Capstone*, 308 Conn. at 795.

13

majority of jurisdictions to consider the matter," Connecticut "would also disallow independent actions for bad faith investigation." *Capstone*, 308 Conn. at 799. There must be a violation of "express duties" under the contract for a party to maintain a bad faith cause of action—i.e., a substantive bad faith claim—so "[u]nless the alleged failure to investigate led to the denial of a contractually mandated benefit," a plaintiff has "not raised a viable bad faith claim." *Id*. at 796. Mr. Sheppard's bad faith claims thus fail as a matter of law.[11]

### V. Motion for Default Judgment

Metropolitan has also filed a Motion for Default Judgment against Mr. Sisbarro, following this Court's entry of default against him. Despite Mr. Sisbarro's default, I still have an obligation to construe the policies to determine whether they provide coverage. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that on a motion for default judgment following a defendant's default, "a court is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether the [plaintiff's] allegations establish . . . liability as a matter of law.") (internal citing reference omitted). Because I have determined that the policies do not require Metropolitan to defend or indemnify Mr. Sisbarro for claims arising out of the May 2012

---

[11] Mr. Sheppard cites *Tucker v. American International Group, Inc.*, 9-cv-1499, 2011 WL 6020851 (D. Conn. Dec. 2, 2011) to support his argument that Connecticut law permits a procedural bad faith claim. However, the court in *Tucker* issued a later opinion that directly reversed its prior reasoning. Specifically, in its later decision the court granted defendants summary judgment as to plaintiff's procedural bad faith claim, stating:

> In an earlier Ruling in this case, I noted that the Connecticut Supreme Court had "not yet spoken on the issue of an independent tort of 'procedural bad faith," but this Court had predicted in at least one case that the Connecticut Supreme Court would not limit the tort of bad faith in the insurance context to claims of unreasonable or wrongful denial of claims. However, in light of the Connecticut Supreme Court's subsequent ruling in *Capstone Building Corporation v. American Motorists Insurance Company*, 308 Conn. 760, 793–803 (2013), it is now clear that Connecticut will not recognize an independent tort of "procedural bad faith" in the insurance context.

*Tucker*, 2015 WL 403195, at *28 (internal citation omitted).

accident, I GRANT Metropolitan's Motion for Default Judgment.

## VI. Conclusion

For the reasons above, Metropolitan's Motions for Summary Judgment and Default Judgment are GRANTED. The Clerk is directed to enter judgment and close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           March 2, 2015